Lloyd McCOMY, Petitioner,

v.

UNITED STATES of America,
Respondent.

No. 76–717C(2).

United States District Court,
E. D. Missouri, E. D.

Aug. 19, 1976.

Lloyd McComy, pro se.

Barry H. Short, U. S. Atty., St. Louis, Mo., for respondent.

## MEMORANDUM

REGAN, District Judge.

Petitioner has moved to vacate his sentence. He pleaded guilty to three counts of a twenty-three count indictment charging wire fraud in violation of Section 1343, 18 U.S.C. On August 10, 1973, petitioner was sentenced to an aggregate of eight years imprisonment and an aggregate fine of $3,000. He has twice, without success, sought reduction of sentence. The second motion for reduction of sentence was based in large part on the same matters as those alleged in the present motion.

The motion to vacate is principally grounded on the contention that the presentence report (which had not been disclosed to petitioner prior to sentencing) contains false and misleading unfavorable in-

formation respecting his prior record. He alleges that a juvenile conviction, which was "injected" into the report, was (in addition to the fact it is not a "criminal" conviction under Missouri law) illegal by reason of being uncounseled. The juvenile offense is simply listed as such in the resume of petitioner's prior record, along with his numerous arrests (without convictions) as an adult. He further complains of a "distortion" respecting his military history, in that the report states that petitioner reported that he was a member of the Missouri National Guard, but could not provide any military record or recall his service number. As to this "distortion" he alleges that he was not asked for the information. The only other specific complaint concerning the report is the statement therein that petitioner "reportedly has a quarter of a million dollars stashed away," petitioner alleging that he is in fact without any funds and that his wife receives food stamps assistance.

■ The remaining ground of the motion is that a prosecution witness was guilty of perjury. We consider this allegation first. On a motion to suppress, a Special Agent of the Federal Bureau of Investigation testified concerning the installation and operation of a court-authorized pen register which registered telephone numbers dialed from the telephone in petitioner's "boiler room." During the course of his interrogation the Agent was asked whether he knew how many numbers approximately he picked up through use of the pen register and replied "I have no idea." The pre-sentence report states the exact number of calls which were registered. The contention, based on the foregoing, that petitioner's conviction resulted from the use of perjured testimony is completely frivolous. The mere fact that the Agent (without having refreshed his recollection) could not recall the number of calls registered is in no wise inconsistent with the fact that some one, upon inspection of the records, was able to state the number of calls. And of even greater importance, the statement of the Agent on the motion to suppress had nothing whatever to do with petitioner's subsequent conviction on his plea of guilty.

■ Turning now to the allegedly false and misleading content of the pre-sentence report, there is no doubt that where a judge takes into consideration an invalid conviction in imposing sentence, the sentence should be reconsidered in light of the actual facts. *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). This principle should be equally applicable as to any other false or misleading information, particularly if it is of constitutional magnitude, which may have influenced the sentencing judge in imposing sentence. The fact is, however, that the matters to which petitioner calls our attention did not in any degree influence us in determining what sentence to impose upon petitioner. Rather, it was the facts which bore upon the offenses which led to our decision. Had every item complained of been excised from the pre-sentence report the sentence would not have been less.

Petitioner was the moving force behind the criminal enterprise in which he was engaged and had been for a number of years. In fact, at allocution, petitioner's attorney (although attempting to minimize the seriousness of the offenses) stated that he had been "engaged in the type of work that got him into this trouble for about twenty years." In the pre-sentence report, federal and local officials put the period at twenty-five years. The scheme was to solicit advertisements from a "boiler room" for non-existent or illegitimate publications by means of false and fraudulent representations, in particular as to the official character of the publications and the relationship of the solicitor to various state and local officials. Although each victim, in general, was bilked of only a relatively small amount, in the aggregate the total obtained was substantial. Records of solicitations were kept on 3 by 5 cards, the authorities having found over 2,000 such cards when petitioner's business was closed. Understandably, because of the small amount taken from each victim, petitioner (although arrested from time to time) was

able to avoid trial and conviction in the state courts. In the counts to which petitioner pleaded guilty, it was alleged that petitioner devised a scheme to defraud twenty-one named individuals, these being individuals who surfaced as a result of the use of the pen register. Obviously, they were only the tip of the iceberg.

Petitioner was a professional swindler who set up and operated an illegal business enterprise for the express purpose of taking money from innocent victims. He had no legitimate vocation prior to his arrest on the wire fraud charges. We felt at the time of sentencing, and are still of the opinion, that the sentence we imposed was fair and proper. Accordingly, the motion to vacate judgment and sentence will be overruled.